HARRY ESTELLE, PLAINTIFF-RESPONDENT, v. BOARD OF EDUCATION OF THE BOROUGH OF RED BANK, DEFENDANT-APPELLANT.

Argued December 14, 1953—Decided January 11, 1954.

*Mr. Robert V. Carton* argued the cause for the appellant (*Messrs. Durand, Ivins & Carton,* attorneys).

*Mr. John A. Laird* argued the cause for the respondent (*Mr. Thomas F. Shebell,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J.  The plaintiff was employed as a janitor in one of the defendant's schools for over 25 years and among his duties was that of tending the furnaces.  Although the boilers had been hand-fired with hard coal for many years, in 1934 a motor stoker system was installed and thereafter soft coal was used in a semi-automatic system, the coal being shovelled into a hopper by a janitor from a large coal bin adjacent to the boiler room and carried by a conveyor to the

firebox. There were four janitors in the school so that for one week out of every four each of them took his turn at starting the stokers early in the morning, filling each hopper with coal and firing the three boilers by hand through the fire doors whenever it was necessary. As the coal supply diminished it was necessary for the janitor on duty to go farther into the bin for his coal. As a result of the trampling upon the fine coal on the floor and the sliding of the coal in the bin which resulted from the shovelling, a certain amount of coal dust collected in the air. During the war years the soft coal was of inferior quality so that it was necessary to screen it in the coal bin, an operation that also created a considerable amount of coal dust.

In 1948 the plaintiff developed a wheeze, a pain in his chest, and a cough. On April 26, 1950 he became ill at his work and went to see his doctor, who examined him and sent him home. The plaintiff has not worked since that day due to a serious lung condition.

In October 1950 he filed a petition with the Workmen's Compensation Division, claiming a compensable accident on April 26, 1950. Meanwhile, prior to the hearing of that proceeding the plaintiff in June 1951 instituted this action for damages in the Law Division of the Superior Court, claiming that he sustained injuries by reason of the negligence of the defendant in its failure to provide him with a safe place in which to work. One of the separate defenses pleaded by the defendant was that the plaintiff's exclusive remedy was in the Workmen's Compensation Division.

In February 1952 the workmen's compensation proceeding came on for hearing, and at the conclusion of the plaintiff's case the deputy director granted the defendant's motion to dismiss the petition on the ground that since the petitioner was suffering from the inhalation of dust he had no remedy under the Workmen's Compensation Act because the amendment to that act, *L.* 1949, *c.* 29, that brought this type of disease within the coverage of the act, was not effective until January 1, 1951, which was subsequent to the time that the petitioner became ill. In this respect the deputy director

obviously erred since the effective date of the amendment was January 1, 1950 and it was thus in effect at the time that the plaintiff became incapacitated. No appeal was taken from this decision.

On June 9, 1952, the plaintiff recovered a judgment of $80,000 in the law action. On appeal the Appellate Division of the Superior Court reversed the judgment and remanded the case for a new trial, 26 *N. J. Super.* 9, on the ground that the trial judge had erred in charging the jury that *R. S.* 34:6-48, that requires the employers to provide devices to prevent the contraction by employees of diseases incidental to their work, was applicable to a governmental body such as the defendant board of education. We granted the defendant's petition for certification.

Several questions were again raised on this appeal, but we find it necessary to consider only the first, whether the plaintiff's rights, if any, are controlled by the Workmen's Compensation Act and if so, whether the law courts are without jurisdiction.

Article II of the Workmen's Compensation Act, *R. S.* 34:15-7 *et seq.*, provides that unless the employee notifies his employer in writing of his rejection of workmen's compensation benefits then it is presumed that the act contains his sole and exclusive remedy against the employer. As was held in *Bendler v. Bendler*, 3 *N. J.* 161, 165 (1949):

"The question is fundamentally one of contractual capacity, for the obligations of the optional or elective compensation provisions comprised in Article II of the Compensation Act are thereby constituted an integral part of the contract of hire between a master and his servant, and so are contractual in nature. * * * The elective scheme becomes operative only upon its acceptance by mutual 'agreement, either express or implied,' as therein provided. *R. S.* 34:15-7. Such 'agreement' constitutes 'an acceptance of all the provisions' of the Article and a surrender by the parties of 'their rights to any other method, form or amount of compensation or determination thereof than as' therein provided. *R. S.* 34:15-8. Barring 'an express statement in writing' as 'a part' of the 'contract of hiring * * *, either in the contract itself or by written notice from either party to the other,' that the provisions of

Article II are not 'intended' to apply, it is 'presumed that the parties have accepted the provisions' of the Article, 'and have agreed to be bound thereby.' *R. S.* 34:15-9."

Again, in *Gotkin v. Weinberg*, 2 *N. J.* 305, 308 (1949), we stated:

"Our scheme of compensation, set forth in article 2 of the act, *R. S.* 34:15-7 *et seq.*, enters by operation of law into every contract of hiring made in this state unless there be an affirmative rejection of the plan for the alternative common law liability for negligence as modified by the provisions of article 1 of the Act. The declared public policy of article 2 precludes any other recovery or measure of compensation in cases governed by its terms."

See also *U. S. Casualty Co. v. Hercules Powder Co.*, 4 *N. J.* 157, 163 (1950). It is admitted that no such written rejection of the benefits of the Workmen's Compensation Act was given here pursuant to *R. S.* 34:15-9, and therefore it is clear that the plaintiff's sole remedy for the alleged injury rested in the act.

Although it is admitted by both parties that the disease for which the plaintiff sought recovery was compensable under the 1949 amendment, *L.* 1949, *c.* 29, amending *R. S.* 34:15-31, the plaintiff contends that inasmuch as the Workmen's Compensation Division ruled otherwise, a ruling that was clearly erroneous in law and entered due to a mistake as to the effective date of the statute, this decision is "*res adjudicata* that the plaintiff's injury was not such as fell within the jurisdiction of the Division of Workmen's Compensation, and accordingly the plaintiff's common law remedy was not affected by the Compensation Act." Furthermore, he claims that "the defendant, having moved for and obtained a dismissal of petitioner's claim in the Compensation Bureau, and having taken advantage of such dismissal to escape payment of compensation, on the ground that Estelle could not there recover for his lung fibrosis, cannot now be heard to say that his remedy actually lies before the Division of Workmen's Compensation." It is, of course, axiomatic that jurisdiction cannot be bestowed by consent or acquiescence, *Hoffmann v. Jinks*, 134 *N. J. Eq.* 91, 96

(*E. & A.* 1943); *Brown v. Allied Plumbing and Heating Co.*, 130 *N. J. L.* 487, 488 (*E. & A.* 1943). Accordingly, when the Workmen's Compensation Division erred in ruling that it had no jurisdiction to grant relief, its error cannot give the claimant a remedy in the law courts, where clearly his remedy has been taken from him by the statute.

█ The plaintiff, however, is not without remedy. The Workmen's Compensation Division has that power inherent in all tribunals to reopen judgments in instances of fraud, mistake, inadvertence and the like. *R. S.* 34:15–58 provides in part that "the decision, award, determination and rule for judgment or order approving settlement shall be final and conclusive between the parties and shall bar any subsequent action or proceeding, *unless reopened by the Division of Workmen's Compensation or appealed as hereinafter provided.*" (Emphasis added). In *Stone v. Dugan Brothers of N. J.*, 1 *N. J. Super.* 13, 17 (1948) the Appellate Division of the Superior Court held:

"Under the Workmen's Compensation Act the Bureau had implied statutory power to reopen its earlier judgment of dismissal. See *R. S.* 34:15–58. \* \* \* Although the Act is silent on the subject, we are satisfied that the statutory power to reopen fully embraces instances where the judgment has been entered through mistake or inadvertence."

See also *Rose v. Wagner Construction Co.*, 2 *N. J. Misc.* 118 (*Sup. Ct.* 1924); *Katz v. Zepela*, 10 *N. J. Misc.* 258, 260 (*Sup. Ct.* 1932), affirmed 110 *N. J. L.* 14 (*E. & A.* 1933); *Breen Iron Works v. Richardson*, 115 *N. J. L.* 305 (*Sup. Ct.* 1935), affirmed 117 *N. J. L.* 150 (*E. & A.* 1936); *Air-Way Branches Inc. v. Board of Review*, 10 *N. J.* 609, 614 (1952). In addition, at the oral argument counsel for the defendant stated that it would consent to any reopening of the decision of the Workmen's Compensation Division.

We conclude that the trial court was without jurisdiction and therefore its judgment was null and void. In view of this result it is unnecessary for us to pass upon the other points raised on the appeal.

The judgment of the Appellate Division is accordingly modified.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.